# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------- x

:

**BEN ROOD,**                              : Civil Action No. _____

**on behalf of himself and**              :

**similarly situated employees,**         :

                                 : **INDIVIDUAL AND**

             *Plaintiff,*            : **COLLECTIVE/CLASS**

                                 : **ACTION COMPLAINT**

              v.                  :

:

**R&R EXPRESS, INC.,**                     : **Jury Trial Demanded**

:

             *Defendant.*             : **Electronically Filed**

:

------------------------------------------------------- X

## INDIVIDUAL AND COLLECTIVE/CLASS ACTION COMPLAINT
### Nature of the Action, Jurisdiction, and Venue

1.      This is an individual and collective/class action under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 207(a) & 216(b), the Pennsylvania Minimum Wage Act (PMWA), 43 P.S. §§ 333.104(c) & 333.113, and the Pennsylvania Wage Payment and Collection Law (WPCL), 43 P.S. § 260.3, to recover damages for non-payment of wages.

2.      Jurisdiction of this court is invoked under 28 U.S.C. § 1331 and, for the supplemental state claims, 28 U.S.C. § 1367(a).

3.      The actions and policies alleged to be unlawful were committed in whole or in part around Pittsburgh, PA, where Plaintiff worked for Defendant. This action is within the jurisdiction of, and venue is proper in, the United States District Court for the Western District of Pennsylvania.

**Parties**

4.    **Plaintiff Ben Rood** resides at 115 Thermon Avenue, Glenshaw, PA 15116. Plaintiff worked for Defendant R&R Express, Inc., as a "Logistics Coordinator" from on or about May 31, 2016, until on or about September 12, 2017.

5.    Plaintiff regularly performed work within the state of Pennsylvania.

6.    **Defendant R&R Express, Inc.,** a Pennsylvania corporation, is a common carrier and engaged in the business of freight brokerage, and provides transportation and logistics solutions throughout the United States and internationally. Defendant maintains its headquarters at #3 Crafton Square, Pittsburgh, PA 15205.

7.    At all relevant times Defendant has been an enterprise engaged in interstate commerce with annual revenues in excess of $500,000 and has employees engaged in interstate commerce and the production of goods in interstate commerce and has been subject to the provisions of Section 203(s)(1) of the FLSA.

8.    Defendant is headquartered in Pennsylvania and has regularly employed individuals in the state of Pennsylvania, including Plaintiff, in the performance of work on behalf of Defendant and is, therefore, subject to the provisions of the PMWA and the WPCL.

**Statement of Claims**

9.    Defendant hired Plaintiff on or about May 31, 2016.

10.    Plaintiff held the title of Logistics Coordinator.

11.    Plaintiff was a W-2 employee.

12.    Plaintiff was an employee within the meaning of the FLSA and PMWA.

13.    Plaintiff's last day of work for Defendant was September 12, 2017.

14.    According to Defendant's website shiprrexp.com, R&R is a logistics company that has provided "end-to-end logistics solutions for over 30 years."

15.    Defendant uses a combination of its own truck assets and contracted carriers to move "hundreds of thousands of shipments per year" for its customers.

16.    As noted in par. 6, above, Defendant is a common carrier and engaged in the business of freight brokerage.

17.    Defendant has annual revenues in excess of $75MM.

18.    Defendant provides its services to industries throughout the contiguous United States.

19.    Defendant employs in excess of 500 full time employees.

20.    Plaintiff initially reported to work at the Crafton, PA, office.

21.    He was required to report to work by 8:00 a.m. at the office and continue to work at the office until no earlier than 5:00 p.m., 5 days per week.

22.    After a few months Plaintiff was transferred to Defendant's Greentree, PA, office.

23.    The minimum schedule in the office at Greentree was the same as at the Crafton, PA, office: 8:00 a.m. to 5:00 p.m.

24.    In about February 2017, Plaintiff was transferred to Defendant's Carnegie, PA, office, with the same minimum hours at the office: 8:00 a.m. to 5:00 p.m.

25.    Plaintiff's duties were the same regardless of the office: perform as a Logistics Coordinator.

26.    The Logistics Coordinators report to and perform their duties at various offices of Defendant, including the offices in Pennsylvania where Plaintiff worked, other offices in

Pennsylvania, and other offices in other states.

27.    There are at least 100 other Logistics Coordinators who have been employed by Defendant since September 2014 (three years prior to the filing of this Complaint).

28.    The other Logistics Coordinators have performed the same primary duties as Plaintiff.

29.    The other Logistics Coordinators have been W-2 employees.

30.    The other Logistics Coordinators have been employees within the meaning of the FLSA and PMWA.

31.    Specifically, Plaintiff and the other Logistics Coordinators are responsible for arranging logistics support (freight brokerage) for industries throughout the contiguous United States.

32.    This requires identifying past customers, or potential customers, with shipping needs and persuading these customers to allow Defendant to make the arrangements for the movement of the customer's goods.

33.    The vast majority of the shipping arrangements made by Plaintiff and the other Logistics Coordinators are made through contract carriers.

34.    In effect, R&R, through its Logistics Coordinators, provides a brokerage service.

35.    Plaintiff was told when he was first hired that he would be paid $800 per week for the first 90 days.

36.    After the first 90 days, according to Defendant, Plaintiff would then be evaluated to see if he would be moved to the "next step" of Defendant's program.

37.    Plaintiff was told the "next step" would be to be a "Logistics Coordinator" and be placed on 100% commission.

38.    In actuality Plaintiff performed the duties of a Logistics Coordinator from the first day he

reported to work.

39.    Plaintiff performed productive work from the first day he started to work for Defendant.

40.    Specifically, Plaintiff made arrangements for the movement of the customer's goods, and continued to perform this productive work throughout the period of time he was paid $800 per week.

41.    Plaintiff was not put on commission after 90 days, however.

42.    Rather, Plaintiff continued to be paid $800 per week until on or about February 1, 2017.

43.    Throughout this time (from May 2016 until on or about February 1, 2017) Plaintiff worked more than 40 hours in most if not all workweeks.

44.    Plaintiff worked on average some 43 to 45 hours per week in the office (net of any breaks of 20 minutes or more) and, on average, an additional 3 to 5 hours per week from home.

45.    The work from home was required in order for Plaintiff to answer phone calls/texts/emails from customers and management, and otherwise perform the duties of a Logistics Coordinator.

46.    Management was aware of the work performed by Plaintiff from home: management was normally copied on emails that showed the times Plaintiff was working and communicated directly with Plaintiff via phone and/or email after hours.

47.    Plaintiff was not paid anything for the overtime hours (a total of 6 to 10 hours on average per week), not at the straight rate or overtime rate.

48.    In or about August 2016 Plaintiff was informed by Defendant that when he was placed on commission he would have to "repay" the $800/week he had been receiving.

49.    Defendant referred to this repayment as a "deficit."

50.    Defendant had not told Plaintiff at or before he started to work in May 2016 that any

repayment of a "deficit" would be required.

51.    Plaintiff had never agreed to this condition: repayment of a "deficit."

52.    Plaintiff never would have agreed to such a condition.

53.    In effect such a condition would result in Plaintiff not being paid for all hours worked during the period he was being paid $800/week.

54.    It would also mean Plaintiff would not be paid the amount promised ($800/week).

55.    It would also mean that as the "deficit" was being taken from his earnings after he went on straight commissions that he was not being paid for all non-overtime hours at the promised rate.

56.    On or about February 1, 2017, Plaintiff's pay was converted from $800/week to straight commission.

57.    Defendant told Plaintiff he would be paid 40% of the margin between the amount paid by the customer for the shipment and the amount BR&R paid to the contractor making the shipment.

58.    However, Defendant told Plaintiff that 5% of the margin (which amounts to 12 ½% of the commission) would be taken by R&R to repay the "deficit."

59.    A 40% commission is the standard commission paid by R&R to its Logistics Coordinators.

60.    Defendant told Plaintiff the "deficit" was around $17,000.

61.    From February 1, 2017, until on or about September 12, 2017, Plaintiff was on straight commissions.

62.    During that time Defendant withheld the 5% of the margin (12 ½% of the commission) from each paycheck (bi-weekly) for repayment of the "deficit."

63.    By September 12, 2017, Plaintiff's "deficit" was about $8,000, meaning Defendant withheld some $9,000 of Plaintiff's commissions during that time.

64.    Plaintiff agreed at the commencement of his employment to work for $800 per week until he was placed on commissions.

65.    Plaintiff never agreed to repay a "deficit."

66.    Plaintiff did not agree to the withholding of 5% of the margin (12 ½% of the commission) for repayment of the "deficit."

67.    Plaintiff was non-exempt under the FLSA and the PMWA.

68.    Plaintiff regularly worked more than 40 hours in workweeks.

69.    Plaintiff was entitled to payment of overtime at one-and-one-half times his regular rate of pay for the hours worked in excess of forty hours in workweeks.

70.    Defendant paid no overtime to Plaintiff, either at the straight rate or overtime rate.

71.    Defendant knowingly and intentionally violated the FLSA's mandate for overtime pay. 29 U.S.C. § 207.

72.    Defendant also failed to maintain accurate records of time worked by Plaintiff.

73.    Defendant knowingly and intentionally violated the FLSA's explicit requirement at 29 U.S.C. §211(c) that it maintain accurate records of time worked.

74.    Defendant's violation of the FLSA and PMWA has been knowing, willful and in reckless disregard when it failed to pay Plaintiff at the overtime rate for those hours. Defendant has acted willfully and in reckless disregard of the FLSA and the PMWA.

**Collective/Class Action Averments**

75.   In the past three years Defendant has employed 100+ Logistics Coordinators.

76.   In the past three years Defendant has employed 30+ individuals as Logistics Coordinators who have performed work on behalf of Defendant in Pennsylvania.

77.   These other Logistics Coordinators perform the same primary job duties as Plaintiff: provide logistics brokerage services to R&R's customers.

78.   These Logistics Coordinators, like Plaintiff, have been assigned productive work, and have performed productive work, since the start of their employment.

79.   Specifically, the Logistics Coordinators, like Plaintiff, make arrangements for the movement of the customer's goods, and continue to perform this productive work throughout the period of time they are paid a fixed weekly amount as well as when they are paid commissions.

80.   These Logistics Coordinators have been hired and paid according to the same terms as Plaintiff: a fixed weekly amount (like $800) for a period of time, typically 90 to 180 days; then, straight commissions.

81.   Defendant promises to pay the Logistics Coordinators commissions, typically 40% of the margin between the amount paid by the customer for the shipment and the amount R&R pays to the contractor making the shipment.

82.   However, Defendant withholds a certain percentage of these commissions, typically 5% of the margin (which amounts to 12 ½% of the commission) in order to repay the "deficit" from the period when the Logistics Coordinators are paid a fixed weekly amount (like the $800/week paid to Plaintiff).

83.    A 40% commission is the standard commission paid by R&R to its Logistics Coordinators.

84.    The Logistics Coordinators agree at the commencement of their employment to work for a certain amount per week ($800) until they are placed on commissions.

85.    The Logistics Coordinators do not agree to repay a "deficit."

86.    Even if such an agreement were made between the Logistics Coordinators and R&R such an agreement would violate the FLSA and PMWA: parties cannot agree to waive the minimum wage and overtime protections of the FLSA/PMWA.

87.    The Logistics Coordinators do not agree to the withholding of 5% of the margin (12 ½% of the commission) for repayment of the "deficit."

88.    Logistics Coordinators work out of Defendant's Pittsburgh, PA, office and elsewhere in the United States.

89.    Logistics Coordinators are paid a weekly amount during their initial period of employment, and then commissions only.

90.    Logistics Coordinators regularly work more than forty hours per week.

91.    This work is performed, like Plaintiff, from the office and from home.

92.    Defendant fails to maintain accurate records of time worked for the Logistics Coordinators.

93.    Defendant does not pay the Logistics Coordinators overtime pay for hours worked in excess of forty hours.

94.    The Logistics Coordinators employed by Defendant over the past three years, nationally

as well as in Pennsylvania, have been subject to the same pay policies as Plaintiff (see Par. 34-37, 46-48, 51-58, above).

95.     The 100+ Logistics Coordinators employed by Defendant nationally (which includes the PA Logistics Coordinators) over the past three years have regularly worked overtime.

96.     Defendant has knowingly and intentionally failed to pay the 100+ Logistics Coordinators for their overtime hours either at the straight rate or proper overtime rate.

97.     The 100+ Logistics Coordinators have been non-exempt within the meaning of the FLSA.

98.     The 30+ Logistics Coordinators in PA have been non-exempt within the meaning of the PMWA.

99.     Defendant's failure to pay overtime due to the 100+ Logistics Coordinators employed by Defendant over the past three years, and its failure to maintain accurate records of time worked, has been in violation of the FLSA and the PMWA.

100.    Defendant has knowingly and intentionally violated the FLSA and PMWA with respect to the failure to pay overtime and failure to maintain accurate time records.

## COUNT I:  VIOLATION OF THE FLSA
### Individual and Collective Action (National)

101.    Plaintiff incorporates by reference the preceding paragraphs of this complaint.

102.    Plaintiff and all other similarly situated Logistics Coordinators are employees of Defendant within the meaning of the FLSA.

103.    Defendant is an employer within the meaning of the FLSA.

104.    Plaintiff and all other similarly situated Logistics Coordinators have been compensated initially on a fixed weekly amount and then on a straight commission basis.

105.    Plaintiff and all other similarly situated Logistics Coordinators have regularly worked more than forty hours per week.

106.    Defendant has not paid overtime compensation to Plaintiff and all other similarly situated Logistics Coordinators for work of more than forty hours in workweeks.

107.    Defendant has not paid overtime compensation to Plaintiff and all other similarly situated Logistics Coordinators at the proper overtime rate.

108.    Defendant has failed to pay Plaintiff and all other similarly situated Logistics Coordinators for hours worked in overtime weeks at the promised rate.

109.    Defendant has failed to maintain accurate records of time worked for Plaintiff and all other similarly situated Logistics Coordinators.

110.    Plaintiff and the other similarly situated Logistics Coordinators have been non-exempt within the meaning of the FLSA.

111.    Defendant's failure to pay overtime at the proper rate to the Logistics Coordinators has violated and continues to violate the FLSA.

112.    For at least the past three years, Defendant's violations of the FLSA are knowing, willful, and in reckless disregard of the FLSA's overtime requirements.

113.    Plaintiff and all other similarly situated Logistics Coordinators are entitled to recover from Defendant the overtime pay improperly withheld by Defendant, plus interest, attorneys' fees, and costs.

114.   Plaintiff and all other similarly situated Logistics Coordinators are also entitled to recover liquidated damages under 29 U.S.C. §§ 207(a) & 216(b).

## COUNT II:  VIOLATION OF THE PMWA
### Individual and Class Action (Pennsylvania)

115.   Plaintiff incorporates by reference the preceding paragraphs of this complaint.

116.   Plaintiff and all other similarly situated Logistics Coordinators in Pennsylvania are employees of Defendant within the meaning of the PMWA.

117.   Defendant is an employer within the meaning of the PMWA.

118.   Plaintiff and all other similarly situated Logistics Coordinators have been compensated initially on a fixed weekly amount and then on a straight commission basis.

119.   Plaintiff and all other similarly situated Logistics Coordinators have regularly worked more than forty hours per week.

120.   Defendant has not paid overtime compensation to Plaintiff and all other similarly situated Logistics Coordinators for work of more than forty hours in workweeks.

121.   Defendant has not paid overtime compensation to Plaintiff and all other similarly situated Logistics Coordinators at the proper overtime rate.

122.   Defendant has failed to pay Plaintiff and all other similarly situated Logistics Coordinators for hours worked in overtime weeks at the promised rate.

123.   Plaintiff and all other similarly situated Logistics Coordinators are non-exempt within the meaning of the PMWA.

124.   Defendant's failure to pay overtime to Plaintiff and similarly situated Logistics

Coordinators employed in Pennsylvania violates the PMWA.

125.  Defendant's failure to maintain accurate records of time worked for Plaintiff and similarly situated employees employed in Pennsylvania violates the PMWA.

126.  Plaintiff and similarly situated Logistics Coordinators employed in Pennsylvania are entitled to recover from Defendant the overtime pay improperly withheld by Defendant, plus interest, attorneys' fees, and costs.

## COUNT III:  BREACH OF CONTRACT
### Individual and Class Action (Pennsylvania)

127.  Plaintiff hereby incorporates by reference the preceding paragraphs of this complaint.

128.  When Defendant hired Plaintiff and the other PA Logistics Coordinators Defendant made definite, clear promises to pay a specific amount per week for all work performed for Defendant for a certain period of time.

129.  Those promises created enforceable contractual obligations.

130.  Plaintiff and the other PA Logistics Coordinators provided consideration for those promises by promising to deliver and actually delivering valuable services to Defendant.

131.  Despite its contractual obligation to compensate Plaintiff and the other PA Logistics Coordinators for work performed at a fixed weekly amount, Defendant breached those contractual obligations when it withheld Plaintiff's and the other PA Logistics Coordinators' pay when converted to commissions in order to "repay" compensation received during the period when the Logistics Coordinators were being paid weekly.

132.  The amount owed to Plaintiff and the other PA Logistics Coordinators represents wages.

133.  Defendant did not have any good-faith basis on which to withhold the wages.

134.    As a result of Defendant's breaches, Plaintiff and the other PA Logistics Coordinators have been denied the benefit of the bargain, and have suffered substantial damages in the form of unpaid wages.

135.    Plaintiff and the other PA Logistics Coordinators are entitled to damages commensurate with the unpaid wages, plus interest, plus compensatory damages resulting from the breach.

**COUNT IV:  VIOLATION OF THE WPCL**
**Individual and Class Action (Pennsylvania)**

136.    Plaintiff hereby incorporates by reference the preceding paragraphs of this complaint.

137.    Defendant's contractual obligation to pay Plaintiff and the other PA Logistics Coordinators for hours worked each week at an agreed upon amount created obligations under the WPCL, 43 P.S. § 260.1 *et seq*.

138.    The compensation Defendant failed to pay to Plaintiff and the other PA Logistics Coordinators for hours worked constitute wages within the meaning of the WPCL.

139.    Defendant violated the WPCL by failing to pay the promised wages for work Plaintiff and the other PA Logistics Coordinators performed.

140.    Defendant did not have any good-faith basis for withholding the promised wages.

141.    Plaintiff and the other PA Logistics Coordinators are entitled to unpaid wages as well as statutory penalties (25% of unpaid wages), pre-judgment and post-judgment interest, attorneys' fees, and costs.

## **PRAYER FOR RELIEF**

142.    WHEREFORE, Plaintiff and all others similarly situated respectfully request that this Court:

    A.  Order Defendant to pay the unpaid overtime compensation owed to Plaintiff and all other similarly situated Logistics Coordinators (nationally);

    B.  Order Defendant to pay liquidated damages to Plaintiff and all other similarly situated Logistics Coordinators (nationally);

    C.  Order Defendant to pay Plaintiff and the other PA Logistics Coordinators for unpaid non-overtime wages;

    D.  Order Defendant to pay pre- and post-judgment interest as well as the litigation costs and reasonable attorneys' fees incurred by Plaintiff and all other similarly situated Logistics Coordinators (nationally); and

    E.  Grant such further relief as the Court deems necessary and proper.

Respectfully submitted,

  s/Joseph H. Chivers
Joseph H. Chivers, Esq.
PA ID No. 39184
First & Market Building
Suite 650
100 First Avenue
Pittsburgh, PA  15222
jchivers@employmentrightsgroup.com
Tel: (412) 227-0763
Fax: (412) 774-1994

John R. Linkosky, Esq.
PA ID No. 66011
JOHN LINKOSKY & ASSOCIATES
715 Washington Avenue
Carnegie, PA  15106
linklaw@comcast.net
Tel.:  (412) 278-1280
Fax:  (412) 278-1282

*Counsel for Plaintiff*
*and all others similarly situated*

Dated: <u>September 18, 2017</u>