IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEN ROOD, | ) |
|     Plaintiff, | ) 2:17-cv-1223-NR |
| v. | ) |
| R&R EXPRESS, INC., | ) |
|     Defendant. | ) |

## OPINION

**J. Nicholas Ranjan, United States District Judge**

In this wage-and-hour class action, Plaintiff Ben Rood alleges that Defendant R&R Express, Inc. failed to pay overtime wages to him and other similarly situated employees in violation of the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act. Mr. Rood worked for R&R Express as a "Logistics Coordinator." Mr. Rood contends that R&R Express used company-wide policies to compensate its Logistics Coordinators, and that no matter if a Logistics Coordinator was being paid hourly, weekly, or straight commissions, R&R Express did not pay them overtime for hours worked over 40 in a single workweek for the period between September 18, 2014, through December 31, 2017.

This Court previously granted certification of a collective action under the FLSA and class certification under Federal Rule of Civil Procedure 23. ECF 126. R&R Express now seeks to undo both aspects of that order through its motion for decertification.

R&R Express argues that the Court should decertify the FLSA collective action because only three people opted into the action. This argument is misplaced, however, because there is no numerosity requirement for a collective action under the FLSA. The Court will not decertify the FLSA collective action. R&R Express also argues that the Court should decertify the Rule 23 class because the class consists of

"at most" seventeen members, which is too few to support class treatment of the claims. But Rule 23 doesn't provide an iron-clad numerical minimum for class certification. Rather, the number is simply the starting point; the focus is on whether, under the circumstances presented, joinder of all members into a single action would be impracticable. Because R&R Express's own conduct in litigating this case has made joinder of all members impracticable, the Court will not decertify the Rule 23 class.

The parties have also cross-moved for summary judgment on liability. R&R Express admits that it did not pay overtime to Mr. Rood and the other Logistics Coordinators. But it argues that it didn't have to because the Logistics Coordinators fall under either the administrative employee exemption or the retail or service establishment exemption. The Court finds that neither of these exemptions applies.

With respect to the administrative exemption, R&R Express cannot meet one of its essential requirements. That is, R&R Express cannot show that the Logistic Coordinators' primary duty was directly related to management or general business operations. Instead, the Logistics Coordinators' primary duty was inside sales, which falls outside the scope of the administrative exemption.

As for the retail or service establishment exemption, R&R Express has waived any argument that this affirmative defense applies. That's because R&R Express waited until after discovery had closed to assert it. Springing this defense on Mr. Rood at summary judgment unfairly prejudices him because he is deprived of an opportunity to pursue the necessary discovery to rebut it.

Finally, R&R Express attempts to limit its damages exposure by arguing that the good faith defense applies and therefore mandatory liquidated damages under the FLSA would be inappropriate. R&R Express, however, has not offered sufficient evidence to meet its a heavy burden of proving entitlement to this defense. The only evidence R&R Express has offered in support is that it hired a human-resources

professional and relied upon that person to ensure compliance with the FLSA. But there's no evidence that this professional, or anyone else at R&R Express, ever took the necessary affirmative steps to determine whether R&R Express's compensation policy for Logistics Coordinators complied with the FLSA. Therefore, the Court will deny summary judgment as to this defense.

For these reasons, the Court will deny R&R Express's motion to decertify, grant Mr. Rood's motion for summary judgment on the overtime exemption status of the FLSA collective and Rule 23 class, and deny R&R Express's motion for summary judgment on the good faith defense.

## BACKGROUND

### I. Relevant factual background.

The relevant material facts to the Court's analysis are not in dispute.

#### A. The business of R&R Express.

R&R Express is a contract motor carrier engaged in the business of trucking, freight brokerage, and supply-chain services. ECF 1, ¶ 6; ECF 17, ¶ 6. The trucking side of the business involves physically moving freight using R&R Express's own "assets." ECF 140-1, 48:2-5. Freight brokerage consists of identifying businesses that need freight transported and brokering a sale of transportation services between that customer and a transportation resource, such as a train company, a maritime shipping company, or a trucking company (including R&R Express's own trucking division). *Id.* at 33:19-34:5. The business of "supply-chain services" provides clients with a "better way" to complete a shipment or recurring shipments. *Id.* at 34:7-23. That said, R&R Express is mostly "a trucking company that's trying very hard to be a [third-party logistics provider]." *Id.* at 49:12-14.

#### B. The role of Logistics Coordinators.

Since at least August 2014, all of R&R Express's services are sold through inside sales representatives that it calls Logistics Coordinators. *Id.* at 49:19-25, 50:2-

7, 50:10-21; *see also* ECF 140-7, 17:16-23 (the head manager of Logistics Coordinators describing the position as "inside sales people").

Mr. Rood was employed by R&R Express as a Logistics Coordinator from June 7, 2016, though September 12, 2017. ECF 1, ¶ 4; ECF 17, ¶ 4. R&R Express originally wanted the Logistics Coordinators to "be a source of sales for the truck line." ECF 140-1, 48:2-5. And that has turned out to be the case since the Logistics Coordinators are responsible for all the company's sales. *Id.* at 49:19-50:18. Given that fact, it is clear that the primary purpose of Logistics Coordinators is to increase R&R Express's sales. *Id.* at 205:22-206:2; *see also* ECF 140-2, 21:3-5 (a Logistics Coordinator testifying that his purpose was to "makes sales for the company"); ECF 140-9, 23:5-8 (head of human resources confirming that Logistics Coordinators "are there for the purpose of making sales").

To make these sales, the Logistics Coordinators have to: (i) contact potential customers to attempt to sell them transportation services (ECF 140-2, 22:18-23:3; ECF 140-7, 17:24-18:3); (ii) make sales according to training and pre-approved resource lists provided by R&R Express (ECF 140-1, 216:5-217:8, 218:14-219:2); and (iii) confirm that the transportation service was provided after the sale is made (ECF 140-2, 86:18-21). The Logistics Coordinators conduct all these activities from inside R&R Express's offices. ECF 140-1, 91:14-17.

To the extent R&R Express does not provide the transportation service being sold, the Logistics Coordinators engage in a brokered sale—that is, a sale to a customer ("to move their freight and agree on a rate") and a corresponding sale to a service provider to transport the freight. ECF 140-2, 22:25-23:3. When arranging carriers, the Logistics Coordinators must pick from R&R Express's pre-approved list of motor carriers. ECF 140-1, 216:18-217:8.

**C.     Compensation for Logistics Coordinators.**

During the class period, R&R Express used company-wide policies to

compensate its Logistics Coordinators. ECF 140-13, pp. 9-10. The compensation involved three stages. A new hire was first paid an hourly rate of $20 per hour. *Id.* After the initial period, some Logistics Coordinators were transitioned temporarily to $800 per week compensation. ECF 140-14, 32:1-10. Later, Logistics Coordinators were transitioned to payment based purely on commissions. ECF 140-13, pp. 9-10. The commissions were paid based on "margin"—meaning the margin between what a customer paid for a transportation job and the price paid to the transportation provider to carry out the transportation. ECF 140-1, 64:3-15.

Regardless of whether a Logistics Coordinator was being paid hourly, weekly, or straight commissions, R&R Express did not pay them overtime for hours worked over 40 in a single workweek. ECF 140-15; ECF 140-16; ECF 140-17; ECF 140-18.

## II.  Relevant procedural background.

After the close of discovery, the Court granted Mr. Rood's motion for final certification of the collective action under the FLSA and for class certification under Rules 23(a) and 23(b)(3). ECF 126. Notice was distributed to members of the Rule 23 class, and the period for class members to opt in (under the FLSA) or out (under Rule 23) has ended.

R&R Express now moves to decertify the FLSA collective and Rule 23 class. The parties have cross-moved for summary judgment as to liability.

## DISCUSSION & ANALYSIS

### I.  The FLSA collective action is not subject to a numerosity requirement.

R&R Express first argues that the Court should decertify the FLSA collective action because "only three individuals have elected to opt-in[.]" ECF 144, p. 6. This argument is misplaced, however, because the "FLSA collective action, unlike a Fed. R. Civ. P. 23 class, is not subject to a numerosity requirement." *Burkhart-Deal v. Citifinancial, Inc.*, No. 07-1747, 2009 WL 3053718, at *1 (W.D. Pa. Sept. 18, 2009) (Ambrose, J). Instead, all that is required is for the plaintiff to "demonstrate that

there are other employees who are 'similarly situated[.]'" *Id.* (citations omitted); *see also Goldman v. RadioShack Corp.*, No. 03-0032, 2006 WL 336020, at *5 (E.D. Pa. Jan. 23, 2006) ("Congress clearly chose not to have the Rule 23 standards apply and instead adopted the 'similarly situated' standard." (cleaned up)).

The Court already found that the opt-in members of the collective are similarly situated (ECF 126, p. 11), and R&R Express does not raise any new challenges to that finding. As a result, the Court will not decertify the FLSA collective.

## II. Mr. Rood established numerosity for the Rule 23 class because joinder would be impracticable.

R&R Express next argues that the Court should decertify the Rule 23 class because of a "failure to establish numerosity." ECF 144, p. 8. R&R Express believes that the class consists of at most seventeen members and that "[c]lass sizes of less than twenty members … are insufficiently numerous." *Id.* at p. 7. While that is often true, it is not the case here.

"Rule 23(a)(1) sets forth what is commonly known as the numerosity requirement." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016). That rule, however, does not establish a numerical minimum for class certification. *Id.* Rather, "the rule simply states that the numerosity requirement is satisfied when 'the class is so numerous that joinder of all members is impracticable.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(1)). "This calls for an inherently fact-based analysis that requires a district court judge to take into account the context of the particular case, thereby providing district courts considerable discretion in making numerosity determinations." *Id.* (cleaned up). As a result, "the number of class members is the starting point of [the] numerosity analysis," not the determinative factor. *Id.* at 250.

That said, the Third Circuit has instructed that the Court's "inquiry into impracticability should be particularly rigorous when the … class consists of fewer than forty members." *Id.* The parties agree that there are 18 class members in this

case. ECF 146, p. 5. Thus, the Court must thoroughly explore impracticability, keeping in mind that generally "a class of 20 or fewer is usually insufficiently numerous." *In re Modafinil*, 837 F.3d at 250 (cleaned up).

As the Court previously outlined in its memorandum opinion certifying the Rule 23 class, determining whether joinder would be impracticable comes down to weighing six factors: (i) judicial economy; (ii) the claimants' ability and motivation to litigate as joint plaintiffs; (iii) the financial resources of class members; (iv) the geographic dispersion of class members: (v) the ability to identify future claimants; and (vi) whether the claims are for injunctive relief or for damages. *Id.* at 253. While each of these factors impacts the final calculus, the Third Circuit has made it clear that "both judicial economy and the ability to litigate as joined parties are of primary importance." *Id.* at 253.

The Court already explained how both primary factors supported class certification, and nothing has changed in the interim. ECF 126, pp. 3-7. The Court will therefore incorporate its prior rationale but reiterates a few points for clarity.

This is an unusual case in that R&R Express took affirmative steps to discourage its past and current employees from participating in the class. For example, R&R Express's President made threats to draw out the proceedings for any claimant who tried to join the action by subpoenaing their phone records, reviewing every email they ever sent, and so on. *Id.* at p. 4. R&R Express also drafted and distributed affidavits to the putative class members containing averments that directly contradicted the class claims. *Id.* at p. 5. R&R Express then encouraged the class members who received these affidavits to sign them under coercive circumstances. *Id.* As a result, R&R Express's own actions may account for the relatively small number of class members and counsels strongly against decertification. *See Rannis v. Recchia*, 380 F. App'x 646, 651-52 (9th Cir. 2010) (affirming district court's decision not to decertify class where defendant

"aggressively urged at least one class member to opt out" and its actions may have accounted for the fact the class size was reduced "from 74 to 20 class members").

There's no doubt that the class in this case is on the smaller side. Even so, other courts have held such a "small class size does not preclude a finding that the numerosity requirement is met." *See, e.g., id.*; *Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001) (certifying a seventeen-member class of employees suing their employer over a benefit plan because the court found that they could "suffer the fear recognized in suing one's employer"); *Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 407 (W.D.N.Y. 2011) (certifying a sixteen-member class because joinder was "improbable under the circumstances" given the "small recoveries that many of the class members could reasonably expect to recover"). And after rigorously examining the circumstances here, the Court finds that joinder is impracticable, largely because of actions taken by R&R Express. R&R Express cannot actively work to limit the size of the putative class and then use its success as a basis to thwart certification. The Court will not decertify the Rule 23 class.

### III. The administrative exemption to the overtime requirement does not apply to the Logistics Coordinators.

Turning next to the cross-motions for summary judgment,[1] all Pennsylvania employees are entitled to the overtime protections of the FLSA and the PMWA unless

---

[1] The Court applies the familiar standard of Federal Rule of Civil Procedure 56, which states that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up). The moving party bears the initial burden to show the lack of a genuine dispute of

their employer establishes that they are covered by an exemption. *Paul v. UPMC Health Sys.*, No. 06-1565, 2009 WL 699943, at *8 (W.D. Pa. Mar. 10, 2009) (Conti, J.). R&R Express argues that Logistics Coordinators, like Mr. Rood, are covered by the administrative exemption, so R&R Express did not have to pay them overtime. The Court disagrees.[2]

"The FLSA exemptions are to be narrowly construed." *Id.* (citation omitted). And "[w]hether an exemption applies is a mixed question of law and fact." *Id.* at *9 (citing *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900 (3d Cir. 1991)). This means that "[t]he court must construe the facts of the record in [the] light most favorable to plaintiff and draw factual inferences in favor of plaintiff from the record. The court must determine whether, given the facts and inferences, plaintiff is exempt as a matter of law." *Id.* (citations omitted). "[I]f the record is unclear as to some exemption requirement, the employer will be held not to have satisfied its burden." *Martin*, 940 F.2d at 900.

"The administrative exemption applies if the employee (1) is compensated on a salary basis of not less than $455 per week, (2) primarily performs office or non-manual work directly related to management or general business operations of the employer, and (3) exercises discretion or independent judgment." *Paul*, 2009 WL 699943, at *9 (citations omitted). "A job title alone is insufficient to establish the exempt status of an employee." 29 C.F.R. § 541.2. Instead, the Court must look to the employee's "salary and duties" and determine whether they "meet the requirements of the regulations." *Id.* If the employer fails to establish any one of

---

material fact, and "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is improper. *Id.* (cleaned up).

[2] "The exemptions under both the FLSA and PMWA are identical." *Paul*, 2009 WL 699943, at *8 n.1 (citations omitted). Thus, the same analysis applies to Mr. Rood's FLSA and PMWA claims. *Id.*

these requirements, then it will not be entitled to the exemption, regardless of the outcome of the other requirements. *See Smith v. Frac Tech Servs., LLC*, No. 09-679, 2011 WL 96868, at *23 (E.D. Ark. Jan. 11, 2011) ("Because Frac Tech cannot establish that the primary duty of field engineers directly relates to the *management* or *general business* operations of Frac Tech or Frac Tech's customers, the field engineers do not qualify for the administrative exemption, and it is unnecessary to address the other elements of the administrative exemption." (emphasis in original)).

At a minimum, R&R Express cannot establish that Logistics Coordinators primarily perform office work directly related to management or general business operations and so it is not entitled to the administrative exemption.

### A. The Logistics Coordinators do not pass the primary duty test.

As noted above, the second prong of the administrative exemption test is the "primary duty test, which requires the employee's primary duty be to perform office or non-manual work directly related to management or general business operations of the employer." *Paul* 2009 WL 699943, at *10. "Primary duty" is defined as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700.

For work to be "directly related to the management or general business operations," it must be "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). But "[t]he concept of a 'production worker' is not limited to individuals involved in the manufacture of tangibles." *In re Enterprise Rent-a-Car Wage & Hour Employ. Practices Litig.*, No. 09-210, 2012 WL 4356762, at *17 (W.D. Pa. Sept. 24, 2012) (Conti, J.) (citing *Martin*, 940 F.2d at 903-04). Rather, the "administrative/production dichotomy turns on whether the services or goods

provided by the employee constitute the marketplace offerings of the employer, or whether they contribute to the running of the business itself." *Id.* (citation omitted).

In deciding which side of the line an employee's duties fall, "context matters." *Id.* For example, "an underwriter at a department store who decides whether to issue credit to consumers performs a support function auxiliary to the department store's primary function of selling clothes; whereas, an underwriter for a large bank is directly engaged in creating the goods—loans and other financial services—produced and sold by the bank." *Id.* (cleaned up). Employees who may perform some administrative tasks are not exempt if they are merely engaged in the "day-to-day carrying out of [the business's] affairs." *Id.* (citation omitted).

Mr. Rood argues that the "primary business of R&R Express is to sell transportation solutions—trucking, railway, shipping, and multi-modal transportation—and the Logistics Coordinators engage in activities relating to the day-to-day production of sales." ECF 139, p. 14. In support, Mr. Rood points to the testimony of one Logistics Coordinator who testified that his "purpose" at R&R Express was "to make sales for the company." ECF 140-2, 21:3-5. He also notes that a manager of Logistics Coordinators summarized the job like this: "We contact customers and we sell a service." ECF 140-7, 17:24-18:3. Even R&R Express's President admitted that all the company's services are sold through its Logistics Coordinators. ECF 140-1, 49:19-25, 50:2-7, 50:14-18. Finally, R&R Express's head of human resources testified that Logistics Coordinators "are there for the purpose of making sales." ECF 140-9, 23:5-8.

Generally speaking, "[i]nside sales tasks," like those described above, "are not within the ambit of the administrative exemption." *In re Enterprise*, 2012 WL 4356762, at \*19 (citing *Martin*, 940 F.2d at 903-06). To get around this principle, R&R Express argues that "[i]f logistics coordinators occasionally placed sales calls, this is not determinative on the categorization of logistics coordinators' primary

duties." ECF 144, p. 10. Instead, R&R Express claims that the "primary duty of logistics coordinators, as the name suggests, is coordination between shippers and transporters and acting as a consultant to customers with shipping needs, this is a multi-faceted and complex series of interactions." *Id.* at pp. 9-10. For example, "[l]ogistics coordinators identify unique distribution challenges (e.g., time constraints, requests for visibility, tracking and tracing, costs) and they develop ways to meet those challenges." *Id.* at p. 12. These actions, even if they were the primary duties of Logistics Coordinators, do not qualify as administrative.

"[A]ctivities necessarily included in the process of closing specific sales" do not transform the primary duties of an inside salesperson into administrative tasks. *Martin*, 940 F.2d at 905. The activities described by R&R Express, however, fall into that category. R&R Express's entire business is selling logistics coordination services. To sell that service, a Logistics Coordinator, by necessity, would have to understand the customer's "unique distribution challenges" and then "develop ways to meet those challenges," as R&R Express described. Thus, these "activities are only routine aspects of sales production within the context of [R&R Express's] operation." *Id.* at 905. They are not activities designed to create "an increase in sales generally among all customers," which would make them administrative. *Reiseck v. Universal Communs. of Miami, Inc.*, 591 F.3d 101, 107 (2d Cir. 2010).

R&R Express, of course, disagrees with this characterization and cites the Third Circuit's decision in *Smith v. Johnson & Johnson*, 593 F.3d 280 (3d Cir. 2010) in support of its position that the Logistics Coordinators' duties go beyond mere "production." That case is distinguishable from the facts here, however. There, the employee was an outside pharmaceutical sales representative who did not sell the company's products directly to doctors. *Id.* at 282. Instead, her job was to promote sales by traveling around "extoll[ing] the benefit of [the pharmaceutical product]" and the employer "hoped that the doctors, having learned about the benefits of [the drug],

would choose to prescribe this drug for their patients." *Id.* That's materially different from how R&R Express describes the Logistics Coordinators' job, which is to make actual sales of the company's core services. *See Smith v. Frac Tech Servs., LLC*, No. 09-679, 2011 WL 96868, at *23 (E.D. Ark. Jan. 11, 2011) (rejecting argument that "even though the field coordinators' jobs related directly to fracturing—the primary output of the company—that fact does not equate them to persons working on a production line or selling a product in a retail store" and granting summary judgment for plaintiff on administrative exemption (cleaned up)).

Thus, the Court finds that the Logistics Coordinators' primary duty was unrelated to the management or general business practices of R&R Express. Since R&R Express cannot establish at least one of the necessary prongs of the administrative exemption, Mr. Rood is entitled to summary judgment on R&R's claim that it is exempt from the overtime requirement of the FLSA.

### IV. R&R Express has waived its argument that the Logistics Coordinators fall under the retail or service exemption.

For the first time in the long history of this case, R&R Express argues that "logistics coordinators satisfy the elements necessary for application of the retail or service exemption." ECF 144, p. 22. As a result, R&R Express claims it is entitled to summary judgment on this "alternative" basis. *Id.* at pp. 22-26. The problem with this argument is that R&R Express has waived it.

FLSA exemptions "are affirmative defenses and the burden is on defendant to establish them." *Walsh v. Fusion Japanese Steakhouse, Inc.*, --- F. Supp. 3d ---, 2022 WL 395253, at *10 (W.D. Pa. Feb. 9, 2022) (Wiegand, J.) (collecting cases). It is true that "affirmative defenses may be raised at any time, even after trial," but with one critical caveat. *Clews v. Cnty. of Shuylkill*, 12 F.4th 353, 358 (3d Cir. 2021). The affirmative defense can only be raised late in the game if "the plaintiff suffers no prejudice." *Id.* To establish such prejudice, the plaintiff must show that a

defendant's failure to raise the specific defense "deprived [plaintiff] of an opportunity to rebut that defense or to alter [its] litigation strategy accordingly." *Id.* (citing *In re Sterten*, 546 F.3d 278, 285 (3d Cir. 2008)). Mr. Rood has shown that here.

Before its summary judgment briefing, R&R Express never provided notice to Mr. Rood that it intended to raise the retail or service exemption as a defense. R&R Express did not raise it in its answer. ECF 17, ¶¶ 143-167. Nor did it raise it in discovery. That second failure is problematic because Mr. Rood served a pointed interrogatory asking R&R Express to identify the overtime exemptions that it asserted applied to Logistics Coordinators. ECF 140-13, ¶ 17. In response, R&R Express identified only the administrative exemption. *Id.* R&R Express tries to explain away this limited response in two ways, neither of which is availing.

First, R&R Express claims that "Mr. Rood arguably did not inquire specifically about the retail or service exemptions as the interrogatory was geared toward inquiry regarding the 'white collar exemptions' which do not include the retail or service exemption." ECF 150, p. 7. But that's not a fair reading of the interrogatory. This is the interrogatory Mr. Rood served, in full:

> **State, describe and explain the specific regulatory basis for classifying the Logistics Coordinators as exempt under the FLSA or PMWA**, e.g., administrative, executive, professional, etc., and the efforts, if any, undertaken by Defendant to determine the proper FLSA/PMWA classification of the Logistics Coordinators, e.g., inquiries to DOL, advice of counsel, reliance on consultants, internal evaluation, etc.

ECF 140-13, p. 11, ¶ 17 (emphasis added). The emphasized portion of the interrogatory is requesting that R&R Express identify any basis for classifying the Logistics Coordinators as exempt. While it is true that Mr. Rood provides examples falling under the "white collar" umbrella, that list is clearly meant to be illustrative and not exhaustive or otherwise limiting.

Second, R&R Express claims that a legal development in May 2020 (over two years after serving its initial response) made the retail and services exemption a viable defense. ECF 150, pp. 7-8. That may be true, but fact discovery didn't close until March 17, 2021 (ECF 102), and for that almost one-year period, R&R Express had an ongoing duty to supplement its discovery responses under the Federal Rules of Civil Procedure (Fed. R. Civ. P. 26(e)). R&R Express had more than enough time to evaluate this so-called "new development" and supplement its responses, which would have given Mr. Rood an opportunity to explore the factual underpinnings of this affirmative defense.

R&R Express's failure to supplement prejudiced Mr. Rood. Because R&R Express did not affirmatively put Mr. Rood on notice that it planned to assert this exemption, it deprived Mr. Rood, and the class, of "an opportunity to rebut that defense or to alter [their] litigation strategy accordingly." *In re Sterten*, 546 F.3d at 285. Had R&R Express "properly notified [Mr. Rood] of [its] affirmative defense or responded to the interrogatories in a way that would have put [Mr. Rood] on notice of [its] intention to assert the defense, [Mr. Rood] would have been able to conduct further discovery[.]" *Walsh*, 2022 WL 395253, at *11. For example, class counsel could have "served additional discovery requests, issued third-party subpoenas, and taken additional depositions or asked additional questions at the depositions" about the key elements of the exemption. ECF 146-1, ¶ 14. Class counsel could have also "consulted and potentially retained an expert[.]" *Id.* at ¶ 15. The only reason class counsel didn't do those things is because counsel relied on R&R Express's discovery responses in good faith. *Id.* at ¶ 12.

R&R Express argues that Mr. Rood shouldn't be "surprised" by its assertion of the defense because "Mr. Rood's principal argument has been that logistics coordinators are inside salespeople, and the retail or service exemption applies to inside sales." ECF 150, p. 8. Not so. The burden is not on Mr. Rood, as plaintiff, to

anticipate every possible affirmative defense that R&R Express could assert in this case. The burden, instead, rests with R&R Express to assert and prove up those defenses. *See Parker v. NutriSystem, Inc.*, 620 F.3d 274, 277 (3d Cir. 2010) ("The employer has the burden of demonstrating that it is eligible for the retail commission exception.").

In sum, R&R Express "had multiple opportunities to properly put [Mr. Rood] on notice of [its] affirmative defense in a way that would have not prejudiced [Mr. Rood]. However, [R&R Express has] consistently evaded [its] obligation, not only to notify [Mr. Rood] of that affirmative defense, but to otherwise provide information related to the [retail and service] exemption." *Walsh*, 2022 WL 395253, at *13. Thus, R&R Express has waived its affirmative defense based on the retail and service exemption.[3] *Id.*

## V. R&R Express has not met its burden of establishing the good faith defense to a liquidated damages award.

Finally, R&R Express argues that if "the Court were inclined to grant the Plaintiff class' motion for summary judgment, in whole or in part, and determine that [R&R Express] misclassified some or all of the logistics coordinators, [R&R Express] would be entitled to the good faith defense." ECF 144, p. 26. The Court does not agree, at this stage and on this record.

---

[3] While the Court need not reach the merits of R&R Express's retail and service exemption defense, it's doubtful that it would even apply in this context. R&R Express is a freight brokering and transportation service. This is not the kind of service that is offered to the general public. Nor is it like the kind of establishments that typically fall within the exemption's ambit. *See, e.g.*, 29 C.F.R. § 779.318(a) ("Illustrative of such establishments are: Grocery stores, hardware stores, clothing stores, coal dealers, furniture stores, restaurants, hotels, watch repair establishments, barber shops, and other such local establishments."). Freight brokerage, by its nature, isn't "local." It's designed to move goods at a significant volume across a distance.

"When an employer violates the overtime wage provisions of [the FLSA], Section 216(b) provides for payment of both unpaid wages and an equivalent amount of *mandatory* liquidated damages." *Martin*, 940 F.2d at 907 (emphasis in original). "Under the Act, liquidated damages are compensatory, not punitive in nature. Congress provided for liquidated damages to compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due." *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982).

"Despite the mandatory language of the Act, Congress has provided courts with some discretion to limit or not award liquidated damages." *Martin*, 940 F.2d at 907. "[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that this act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages[.]" 29 U.S.C. § 260. Put simply, the "good faith" defense is not a complete defense to liability; it can only limit an employer's liability for double damages.

"[B]efore a district court exercises discretion it must make findings that the employer acted in good faith and with reasonable grounds." *Martin*, 940 F.2d at 907 (cleaned up). The employer "bears the 'plain and substantial' burden of proving he is entitled to discretionary relief from the FLSA's mandatory liquidated damages provision." *Id.* (citation omitted). This burden is "a difficult one to meet," and "[s]imply quoting from the provisions of the [FLSA] is not enough." *Id.* at 907-08 (citations omitted).

To carry its burden, R&R Express, "must show that [it] took affirmative steps to ascertain the Act's requirements but nonetheless, violated it provisions." *Id.* at 908. That doesn't mean the employer has to "consult with a lawyer." *Mogel v. City of Reading*, No. 20-4464, 2021 WL 4989842, at *5 (E.D. Pa. Oct. 27, 2021). But it must do **something** to "ascertain the [FLSA's] requirements." *Id.*

R&R Express has not met its burden. The only evidence R&R Express offers in support of its good faith defense is that it "hired a human resources professional" whom it "reasonably relied upon for advice." ECF 144, pp. 26-27. That is simply not enough.

R&R Express "did not consult the Wage and Hour Division, any governmental or regulatory body, outside counsel, or inside counsel to determine whether [its] compensation of [its Logistics Coordinators] complied with the FLSA." *Walsh v. Fusion Japanese Steakhouse, Inc.*, 548 F. Supp. 3d 513, 532 (W.D. Pa. 2021) (Wiegand, J.). Nor has R&R Express submitted anything clarifying "what materials" its human resources professional "or anyone else" reviewed to determine that its compensation policy complied with the FLSA. *Ader v. SimonMed Imaging, Inc.*, 465 F. Supp. 3d 953, 973 (D. Ariz. 2020). Even where the compensation issue is a close call, "[s]uch paltry evidence is not sufficient to carry [R&R Express's] burden to demonstrate that it acted in good faith." *Flores v. City of San Gabriel*, 824 F.3d 890, 905 (9th Cir. 2016) (affirming district court's finding that employer was not entitled to good faith defense where it "presented no evidence of what steps the human resources department took to determine that the cash-in-lieu of benefits payments were appropriately classified as a 'benefit' under the FLSA"); *see also Mogel*, 2021 WL 4989842, at *5 ("There is no evidence that [R&R Express] discussed the legality of its compensation scheme with a lawyer or anyone else before [Mr. Rood] commenced this litigation.").

Thus, R&R Express is not entitled to summary judgment on this affirmative defense.[4]

---

[4] Mr. Rood did not cross-move for summary judgment on this defense. Therefore, the Court's ruling at this stage is simply that there is insufficient evidence to grant R&R Express summary judgment. R&R Express is therefore not precluded from raising this defense at any damages trial (though the record would need to be much more

## CONCLUSION

For all these reasons, the Court will deny R&R Express's motion to decertify, grant Mr. Rood's motion for summary judgment on the overtime exemption status of the FLSA collective and Rule 23 class, and deny R&R Express's motion for summary judgment on the good faith defense to the imposition of double damages. An appropriate order consistent with this opinion will follow.

Date: April 11, 2022                    BY THE COURT:

                                        /s/ *J. Nicholas Ranjan*
                                        United States District Judge

---

developed to survive a motion in limine or motion for judgment as a matter of law on the defense at trial).