UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------- x
                                                                                           :

**BEN ROOD**, on behalf of himself and all
others similarly situated,                           :

         *Plaintiff*,                               :  Civil Action No. 2:17-1223 NR

                  v.                              :  **Electronically Filed**

**R&R EXPRESS, INC.**,

         *Defendant.*

------------------------------------------------------- x

**Memorandum of Law in Support of
Plaintiff's Unopposed Motion for Final Approval
of Class Action Settlement Agreement**

                                      Joseph H. Chivers
                                         jchivers@employmentrightsgroup.com
                                    The Employment Rights Group, LLC
                                    First & Market Building
                                    100 First Avenue, Suite 650
                                    Pittsburgh, PA  15222
                                    Tel.:  (412) 227-0763
                                    Fax:  (412) 774-1994

                                    Jeffrey W. Chivers, Esq.
                                       jwc@chivers.com
                                    Theodore I. Rostow, Esq.
                                       tir@chivers.com
                                    Chivers LLP
                                    300 Cadman Plaza West, 12th Floor
                                    Brooklyn, New York  11201
                                    Tel.: (718) 210-9825

                                    *Counsel for Plaintiffs
                                    and all others similarly situated*

On July 7, 2022, this Court entered a preliminary approval order in which it found that, pursuant to Federal Rule of Civil Procedure 23(e), it will likely be able to approve the proposed settlement in this action as fair, adequate, and reasonable. *See* ECF No. 162. Per the Court's order granting preliminary approval, notice was sent to the 19-person settlement class pursuant to the terms set forth in the Settlement Agreement (ECF No. 160-1 ("Settlement Agreement")), and Plaintiffs timely filed their motion for approval of attorneys' fees and costs (ECF No. 164). The notice period has now ended, zero (0) members of the settlement class have objected to the settlement, and zero (0) class members submitted requests for exclusion. Accordingly, and for the reasons set forth below and in Plaintiffs' motion for approval of attorneys' fees and costs, the Court should grant final approval to the Settlement Agreement.

### I.  Procedural History

The procedural history of this litigation is set forth in greater detail in Plaintiffs' brief in support of its motion for preliminary approval of the class action settlement. *See* ECF No. 161 at 1–3. In this action, Plaintiffs have alleged that Defendant R&R Express, as a matter of policy and practice, failed to pay wages owed to Plaintiff and the other Logistics Coordinators. Defendant has denied these allegations.

Following extensive litigation and motions practice, the Court granted class certification in this action, *see* ECF No. 126, and then denied Defendant's motion for summary judgment and decertification and granted Plaintiff's motion for partial summary judgment, *see* ECF No. 152. Thereafter, the Parties negotiated a classwide settlement in this action, and, on July 7, 2022, this Court granted Plaintiff's motion for preliminary approval of the class action settlement agreement. ECF No. 162.

Notice was distributed to the Settlement Class Members in accordance with the procedure set forth in the Settlement Agreement. *See* ECF No. 160–1 ¶ 13. The Settlement Administrator, Class Counsel, received a mailing list from Defendant containing data for 19 PMWA Settlement Class Members ("Class List"). The Class List contained the Settlement Class Members' names, last known addresses and last known email addresses. *See* Exhibit 1 ¶ 4 (Settlement Administrator Declaration). Class Counsel updated the mailing addresses in the Class List by searching a publicly available database (PeopleFinder and Whitepages). *Id.* ¶ 6. On July 14, 2022, Class Counsel sent the Court-approved Notices to the 19 PMWA Settlement Class Members contained in the Class List via First Class mail and email. *Id.* ¶ 7. As of August 18, 2022 (five days after the deadline), no requests for exclusion or objection were received by Class Counsel. *Id.* ¶ 10. Plaintiff's counsel has also received no objections or requests for exclusion since that date.

Plaintiffs filed their Unopposed Motion for Approval of Attorneys' Fees and Expenses on July 29, 2022. *See* ECF Nos. 164 & 167. That motion is currently pending before the Court.

The Court has scheduled a fairness hearing on the Settlement Agreement for September 8, 2022. ECF No. 162 at 3.

## II.     THE TERMS OF THE SETTLEMENT AGREEMENT

### A.     The Settlement Class

The proposed Settlement Class consists of the nineteen (19) individuals who were part of the Rule 23 class certified by the Court and who have not excluded themselves. The class members are identified by unique identifying number in the proposed Schedule of Awards, which is attached to the Settlement Agreement as Schedule A and was also attached to Plaintiff's Memorandum of Law in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 161-1); *see also* Settlement Agreement ¶ 18(d). The Parties stipulate and

agree that, for settlement purposes only, the requisites for providing for a fair, adequate, and reasonable resolution of the claims alleged in the Complaint under the FLSA and the PMWA, and the requisites for a class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3) for the Rule 23 Class Members, are met.

### B.     Distribution of the Gross Settlement Amount and Release of Claims

Pursuant to the Settlement Agreement, the Gross Settlement Amount is three hundred fifty thousand dollars ($350,000). *See* ECF No. 160-1 (Settlement Agreement ¶ 11(k)). Pursuant to the Agreement, the Gross Settlement Amount encompasses (i) settlement awards to the PMWA Participating Class Members, (ii) incentive awards to Plaintiffs Rood, Miller, and Zehe, and (iii) attorneys' fees and costs. *See* ECF No. 160-1 (Settlement Agreement ¶¶ 11(k), 11(l), 18(a)–(d)). To the extent any settlement checks are not cashed by the PMWA Participating Class Members, the amount of those checks shall be paid by Defendant to the Parties' agreed-upon *cy pres* recipient, XEL Foundation for Autism Research. *See* ECF No. 160-1 (Settlement Agreement ¶ 24).

With respect to the settlement awards to PMWA Participating Class Members, Defendant will pay the awards pursuant to the Schedule of Awards that was prepared by Class Counsel. *See* ECF No. 161-1. The Schedule of Awards was computed by Class Counsel based on Defendant's time and payroll records and the application of the applicable damages formula for overtime wages under the PMWA. *See* ECF No. 161-2 (Declaration of Joseph H. Chivers ¶ 13). Pursuant to the Settlement Agreement, Class Counsel will confirm to Defendant these final numbers to be paid to each PMWA Participating Class Member within five (5) business days of the Effective Date (which, since there are no objections, would be five (5) business days after the Final Approval of the Settlement). Within five (5) business days of receiving the final confirmation of the breakdown from Class Counsel the Defendant shall issue payment via checks, with appropriate withholdings

for portions of the settlement amount attributed to wages and no withholdings for portions attributed to non-wage income, and shall send all checks to Class Counsel for final distribution. *See* ECF No. 160-1 (Settlement Agreement ¶ 18(a).)

Under the Settlement Agreement, each class member would be bound by the Release set forth in Paragraph 12 of the Settlement Agreement (ECF No. 160-1, Settlement Agreement ¶ 12), unless they exclude themselves from the Settlement by submitting a request for exclusion before the close of the exclusion period (*Id.* at ¶ 15). Any class member who had excluded himself prior to the deadline would not have been entitled to payment of his individual settlement award and would not have been subject to any release in the Agreement. The Settlement Administrator (Class Counsel) shall mail all Settlement Awards to PMWA Participating Class Members within five (5) business days after Defendant delivers the settlement checks to the Settlement Administrator or as soon as reasonably practicable (*Id.* at ¶ 22.)

All Settlement Award checks shall remain valid and negotiable for one hundred eighty (180) days from the date of their issuance and may thereafter automatically be canceled if not cashed within that time, at which time the right to recover any Settlement Award will be deemed void and of no further force and effect. (*Id*. at ¶ 23.) If at the conclusion of the 180-day check void period set forth above there are outstanding checks to Participating Class Members that have not been cashed then the amount of those checks (inclusive of any amounts that would otherwise be withheld for taxes) shall be paid by Defendant to the Parties' agreed-upon *cy pres* recipient, XEL Foundation for Autism Research, subject to the Court's approval in the Final Approval Order. (*Id.* at ¶ 24.) Subject to the Court's approval, the Named Plaintiff Ben Rood shall receive a service award in the amount of $15,000, Opt-In Plaintiff Jonathan Zehe shall receive a service award in the amount of $2,500, and Opt-In Plaintiff David Miller shall receive a service award in the amount

5

of $2,500. Defendant shall issue checks to each of the Plaintiffs for these service award amounts and deliver these to Class Counsel within ten (10) business days of the Effective Date. Class Counsel shall then distribute any Court-approved service awards as ordered by the Court. (*Id.* at ¶ 18(b).)

Pursuant to the Agreement, the parties agreed that Class Counsel would receive attorneys' fees and costs in an amount of not more than $190,000. *Id.* at ¶ 11(l). However, Class Counsel is seeking a lower total of $180,000 in attorneys' fees and costs. These payments of attorneys' fees and costs shall be delivered to Class Counsel via check or made via electronic transfer within ten (10) business days of the Effective Date. (*Id.* at ¶ 18(c)(i).) Class Counsel filed a separate Motion for Approval of Attorneys' Fees and Expenses on July 29, 2022. *See* ECF Nos. 164–167.

Pursuant to the Settlement Agreement, if the Court approves the amounts set forth above, the Net Settlement Amount (the sum of individual settlement awards) would be one hundred fifty thousand dollars ($150,000.00).

## III. DISCUSSION

Plaintiffs respectfully request that the Court enter the accompanying proposed order granting final approval of the class settlement reached in this matter. Defendant does not oppose this motion.

### A. Applicable Legal Standards

#### 1. Legal Standards for Final Approval of Rule 23 Class Action Settlements

To grant final approval, the Court must conclude that the proposed settlement is fair, reasonable, and adequate. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009); Fed. R. Civ. P. 23(e). Trial courts generally are afforded broad discretion in determining whether to approve a proposed class action settlement. *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir.

1995).  The Third Circuit has set forth nine factors to be considered when determining the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the Defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotations and punctuation marks omitted).  Courts in the Third Circuit apply "an initial presumption of fairness . . . where: '(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'"  *Tumpa v. IOC-PA, LLC*, Civil Action No. 3:18-cv-112, 2021 U.S. Dist. LEXIS 2806, at *22-23 (W.D. Pa. Jan. 7, 2021) (quoting *Turner v. NFL (In re NFL Players' Concussion Injury Litig.)*, 307 F.R.D. 351, 387 (E.D. Pa. 2015)).

### 2.  **Legal Standards for Approval of FLSA Settlements**

When employees bring a private action under the FLSA, and present to the district court a proposed settlement pursuant to Section 216(b) of the FLSA, the district court may enter a stipulated judgment if it determines that the compromise reached "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions."  *See Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (citing *Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982).

"In determining whether the compromise resolves a bona fide dispute, the Court must be reassured that the settlement reflect[s] a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching, and the bona fide

7

dispute must be determined to be one over factual issues not legal issues such as the statute's coverage or applicability." *Brumley*, 2012 WL 1019337, at *2 (internal quotation omitted). As this Court has observed, in "most cases, th[e fair and reasonable] standard is not exacting." *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *6 (W.D. Pa. Oct. 22, 2019) (Ranjan, J.). Indeed, "[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Id.* at *16-17 (quotation omitted). The standard for FLSA collective action approval "is lower than the standard for approving a Rule 23 class settlement because of the lack of absent class members in the FLSA context." *Karali v. Branch Banking & Tr. Co.*, No. 3:16-cv-02093-1-TJB, 2020 U.S. Dist. LEXIS 252897, at *2 (D.N.J. Feb. 3, 2020).

**B.   The Court should grant final approval to the Settlement Agreement**

Before granting final approval, the Court must determine that the parties' proposed settlement agreement is "fair, reasonable, and adequate" to protect the interests of class members. Fed. R. Civ. P. 23(e)(2). In granting preliminary approval, this Court evaluated the settlement agreement under the Rule 23(e)(2) fairness factors and determined it was likely to grant final approval. *See* ECF No. 162; Fed. R. Civ. P. 23(e)(1)(B). Now that notice has been distributed and no objections or exclusions have been identified, each of the Rule 23(e)(2) factors weighs in favor of final approval. *See* ECF No. 161 at 9–14. In addition, a presumption of fairness applies to this Settlement Agreement, *see Tumpa*, 2021 U.S. Dist. LEXIS 2806, at *22, because it was (1) negotiated at arm's length, *see* ECF No. 161-2 ¶ 8, (2) after the completion of discovery in the action, *see, e.g.*, ECF No. 104, (3) by class counsel in this action who is experienced in similar litigation, *see* ECF Nos. 161-2–164-4, and (4) not objected to by any class member after the distribution of notice, *see* Ex. 1.

8

There is significant overlap between these factors and the *Girsh* factors, *see, e.g.*, *Tumpa*, 2021 U.S. Dist. LEXIS 2806, at *21–30; ECF No. 161 at 9–14, and the *Girsh* factors weigh strongly in favor of granting final approval to the class action settlement here.

The first factor—the "complexity, expense and likely duration" of the litigation—weighs in favor of settlement. To finish litigation of this action through trial and appeals would likely take a year or more. Given that the Settlement Agreement provides nearly 100% compensation based on highly favorable assumptions to the class (10 hours of unrecorded overtime hours worked per week), there is substantial risk that the class would receive a less favorable outcome by completing litigation in this action.

The second factor, the reaction of the class to the settlement, strongly favors approval. Notice has been sent to all class members and no class member has objected or requested exclusion. *See* Ex. 1 (Declaration of Settlement Administrator).

As noted above, the third factor—the stage of the proceeding and the amount of discovery completed—weighs in favor of final approval. This factor seeks to ensure that "counsel had an adequate appreciation of the merits of the case before negotiation." *Tumpa*, 2021 U.S. Dist. LEXIS 2806, at *25 (W.D. Pa. Jan. 7, 2021) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2010)). Here, the Settlement was reached in the leadup to a class trial, after the completion of all discovery and the Court's rulings on class certification and summary judgment.

The fourth, fifth, and sixth factors, the risks of establishing liability and damages, and the risk of maintaining a class through trial, weigh in favor of approval. While this Court has already certified a class and entered partial summary judgment in favor of Plaintiff and the class, *see* ECF No. 152, there remain significant risks from the continued litigation of this action—specifically, (i) the risk of an unfavorable outcome at trial as to number of unrecorded hours worked (*i.e.*, a jury

could conclude that, on average, very little overtime hours were worked by the class) and (ii) the risk of an unfavorable outcome on appeal as to this Court's rulings as to class certification or summary judgment. Defendant could be expected to present a vigorous defense, both at trial and on appeal, if this settlement is not approved.

The seventh factor—"the ability of the defendants to withstand a greater judgment"—was not a significant factor in the negotiation of the Settlement.

The eighth factor—"the range of reasonableness of the settlement fund in light of the best possible recovery"—weighs in favor of preliminary approval of the Settlement. As noted above, according to Plaintiffs' counsel's calculations and estimates, the total underpayment of wages the Settlement Class would reasonably recover through full and successful litigation of this action would be approximately $151,644. The Gross Settlement Amount thus is more than 230% of the estimated unpaid wages of the Settlement Class, and the Net Settlement Amount equals approximately 99% of the estimated unpaid wages of the Settlement Class. This level of recovery is well above the reasonable ranges that have been approved in other wage-and-hour class action settlements. *See, e.g.*, *Myers v. Jani-King of Philadelphia, Inc.*, 2019 WL 144929, 2019 U.S. Dist. LEXIS 144929, *24-25 (E.D. Pa. Aug. 26, 2019) (approving settlement amount representing "between 20% and 39% of the maximum damages' calculations"); *Guice v. DIRECTV, LLC*, 2018 U.S. Dist. LEXIS 88585, *6 (E.D. Pa. May 24, 2018) (approving settlement that paid plaintiffs 26-41% of allegedly unpaid wages).

The ninth factor—the "range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation"—is perhaps the strongest factor weighing in favor of preliminary approval. As noted above, under the Settlement, the Settlement Class will obtain a substantial recovery that is not subject to the risks that would be attendant on continued

litigation of this action. Based on Class Counsel's knowledge and expertise in this area of law, and the ample discovery record, Class Counsel believe the amounts negotiated by the Parties for resolution of the claims, both individual and class, is a sound compromise for the proposed class representatives and the proposed settlement class.[1]

    **C.**    **The Court should certify the Rule 23 Settlement Class**

The Rule 23 Settlement Class should be finally certified. A case may be certified as a class action under Fed. R. Civ. P. 23 only when:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985). As this Court previously observed in granting preliminary approval of the class action settlement, *see* ECF No. 162 at 1, this Court has already found that the proposed Class meets the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. *See* ECF Nos. 126, 151.

Accordingly, Plaintiff respectfully requests that the Court finally certify the PMWA Settlement Class.

    **D.**    **The Notice Provisions Were Followed and Provided Adequate Notice To The Class that Satisfies Due Process**

The U.S. Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

---

[1] For the reasons outlined above and in Plaintiff's motion for preliminary approval of class action settlement, ECF No. 161, the Settlement Agreement also constitutes a "fair and reasonable" resolution of a bona fide dispute for three-person FLSA collective action comprising Plaintiffs Rood, Zehe, and Miller.

11

of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the proposed Notice and manner of distribution negotiated and agreed upon by the parties was "the best notice practicable," as required under Fed. R. Civ. P. 23(c)(2)(B). As described above, the Notice provisions of the Settlement Agreement were all followed by the Settlement Administrator. None of the class members excluded themselves from the Settlement and no class members filed objections. Under the settlement, all the class members will receive monetary compensation and they will have 180 days in which to cash their checks. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. CONTE & NEWBERG at §§ 8.21 & 8.39; MANUAL FOR COMPLEX LITIG. at § 21.311 & 21.312.

  E. **The Additional Service Payment Allocations and General Release Allocations to Named Plaintiff Ben Rood and Opt-In Plaintiffs Jonathan Zehe and David Miller Are Justified and Should Be Approved**

Defendant agreed to pay Named Plaintiff Ben Rood, Opt-In Plaintiffs Jonathan Zehe, and Opt-In Plaintiff David Miller service awards totaling $20,000 for their efforts in bringing and prosecuting this matter and, in addition, for their general release of all waivable claims against Defendant arising out of their employment. *See* ECF No. 160-1, ¶ 18(b); Declaration of Joseph H. Chivers, Esq. ¶ 3. These amounts will be paid in addition to their recovery of unpaid wages for the time when they worked as logistics coordinators for Defendant.

"[C]ourts routinely approve incentive awards to compensate named Plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). It is particularly appropriate to compensate Plaintiffs with incentive awards where they have actively assisted Plaintiffs' counsel

in their prosecution of the litigation for the benefit of a class. *Tenuto v. Transworld Sys., Inc.*, No. 99-cv-4228, 2002 WL 188569, at *5 (E.D. Pa. Jan. 31, 2002).

With respect to Plaintiff Ben Rood, in particular, Class Counsel respectfully submits that the amount requested is justified by the benefits that his diligent efforts have brought to PMWA Settlement Class Members and the risk he incurred. Plaintiff Rood made an unusually significant contribution of his time and knowledge to the successful prosecution and resolution of this matter. *See* Declaration of Joseph H. Chivers, Esq. ¶¶ 6–11. He consulted regularly with counsel before and after the filing of the initial complaint and subsequent amendments. *Id.* ¶ 7. Plaintiff Rood also worked closely with counsel to prepare for the depositions of the R&R witnesses. *Id.* ¶ 8. Plaintiff Rood personally attended the depositions of seven (7) defense witnesses. *Id.* Critically, this included the 30(b)(b) deposition of Richard Francis (the owner and CEO) and the depositions of six (6) logistics coordinators. *Id.* ¶ 9. Without this personal attendance counsel would not have been able to obtain the same level of evidence vital to the ultimate success on the motion for summary judgment, class certification and settlement. *Id.* ¶ 10. Plaintiff Rood also personally participated in the multiple mediations held in this matter with attorney Louis Kushner, and answered extensive discovery requests directed to him as well as reviewing and advising counsel on the productions from R&R. *Id.* ¶ 11.

In addition, Named Plaintiff Rood also took on significant risk, both in terms of potential risk to his reputation and risk to future job prospects, in coming forward to represent the interests of the class. The risks are not merely hypothetical—Defendant in this action distributed a declaration to other Logistics Coordinators that contained negative statements about Named Plaintiff Rood. *See* ECF No. 111 at 8. The class members' managers took the declarations to the class members and instructed them to sign. *See id.* at 8 & n. 9. Plaintiff Rood was made aware of


these heightened risks during the pendency of this proceeding and insisted on continuing the litigation, including representing the interests of the other logistics coordinators, notwithstanding these risks. *See* Declaration of Joseph H. Chivers, Esq. ¶¶ 12–16. These risks are a frequently cited basis for modest enhancement awards, such as those requested here. *See, e.g.*, *Sand v. Greenberg*, No. 08-cv-7840, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that Plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation").[2]

The additional payments requested in this case for Named Plaintiff Rood and Opt-In Plaintiffs Jonathan Zehe and David Miller are in line with those approved in wage and hour collective and class actions throughout the Third Circuit. *See, e.g.*, *Sakalas v. Wilkes Barre Hosp. Co.*, No. 3:11-cv-0546, 2014 WL 1871919, at *5 (M.D. Pa. May 8, 2014) ("Court believes that the proposed total award of $7,500.00 (or 1.57%) of a $475,000.00 settlement fund is well-deserved and not out of proportion to the level of [named Plaintiff's] cooperation. Such an award would not significantly reduce compensation for the other class members, nor is it out of the mainstream for class action service awards in the Third Circuit."); *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 WL 1344745, at *22-24 (D.N.J. Apr. 8, 2011) (approving service payments of $10,000 to each of eight named Plaintiffs in wage and hour case, and citing 2006 empirical study that found average award per class representative to be $16,000); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-cv-3202, 2009 WL 2137224, at *12 (E.D. Pa. July 16, 2009) (approving $20,000 enhancement awards for each of three named Plaintiffs in wage and hour settlement).

---

[2] The requested awards are also justified for Jonathan Zehe and David Miller in light of their contributions to the class and the risk they undertook in representing the class. *See* Declaration of Joseph H. Chivers, Esq. ¶ 17.

For these reasons and as set forth in the accompanying declaration, the service payment allocation of $15,000 to Named Plaintiff Ben Rood, as well as the service payment allocations of $2,500 to opt-in Plaintiffs Miller and Zehe, should be approved as fair and reasonable.

### F. The Request for Attorneys' Fees and Costs Should be Finally Approved

On July 29, 2022, Plaintiff filed his Unopposed Motion for Approval of Attorneys' Fees and Expenses in the amount of $180,000. *See* ECF Nos. 164-167. This is the same amount preliminarily approved by the Court, *see* ECF No. 162, and communicated to the Class in the Notice approved by the Court, *see* ECF No. 160-2. Since the date the Court preliminarily approved fees and costs, and since the PMWA Class received Notice of same, not a single PMWA Class Member has submitted an objection to the Settlement or to the requested fees or costs. In addition to the reasons stated in Plaintiff's Memorandum of Law in Support of Plaintiff's Unopposed Motion for Attorneys' Fees and Expenses, *see* ECF No. 167, Class Counsel notes that their actual lodestar, as calculated based on hourly rates approved recently in this Court, is more than $240,000, which further supports final approval by this Court of an award for attorneys' fees and expenses in the amount of $180,000.

### IV. <u>CONCLUSION</u>

Based upon the foregoing reasons, Plaintiff respectfully requests that the Court grant his Unopposed Motion for Final Approval of Class Action Settlement Agreement and enter the accompanying proposed final approval order.

<u>Dated</u>: September 1, 2022
  Pittsburgh, PA

 By: <u>s/ Joseph H. Chivers  </u>

  Joseph H. Chivers
   jchivers@employmentrightsgroup.com
  **THE EMPLOYMENT RIGHTS GROUP LLC**

15

First & Market Building
100 First Avenue, Suite 650
Pittsburgh, PA  15222
Tel.:  (412) 227-0763
Fax:  (412) 774-1994

Jeffrey W. Chivers, Esq.
    jwc@chivers.com
Theodore I. Rostow, Esq.
    tir@chivers.com
**CHIVERS LLP**
300 Cadman Plaza West, 12th Floor
Brooklyn, New York  11201
Tel.: (718) 210-9825

*Counsel for Plaintiff
and all others similarly situated*